RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0280p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ESSAM SALEH MOHAMED ALHAJ,

                              *Petitioner,*

            *v.*                                                    No. 08-3322

ERIC H. HOLDER, JR., Attorney General,

                              *Respondent.*

On Petition for Review from a Final Order
of the Board of Immigration Appeals.
No. A95 457 870.

Submitted: March 9, 2009

Decided and Filed: July 10, 2009[*]

Before: DAUGHTREY, ROGERS, and KETHLEDGE, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** David K. Wenger, WENGER & ASSOCIATES, PC, Detroit, Michigan, for
Petitioner. Nehal H. Kamani, James A. Hunolt, UNITED STATES DEPARTMENT OF
JUSTICE, Washington, D.C., for Respondent.

_____

**OPINION**

_____

      MARTHA CRAIG DAUGHTREY, Circuit Judge. Essam Saleh Mohamed Alhaj

petitions this court for review of a decision of the Board of Immigration Appeals affirming

rulings by an immigration judge that mandated Alhaj's removal from the United States to

his native Yemen. In challenging that administrative order, Alhaj contends that he is a

member of a persecuted social group, that he would be subjected to persecution and torture

---

[*] This decision was originally issued as an "unpublished decision" filed on July 10, 2009. On
August 7, 2009, the court designated the opinion as one recommended for full-text publication.

if returned to Yemen, and that the immigration judge erred in denying his request for voluntary departure from this country. We conclude that we do not have jurisdiction to review the factual aspects of Aljah's challenge to the denial of his request for voluntary departure and, moreover, that his remaining assignments of error are without merit. We therefore deny the petition for review.

### FACTUAL AND PROCEDURAL BACKGROUND

The petitioner is a Yemeni national who was admitted to the United States as a non-immigrant visitor in 1997, overstayed his visa, and was placed in removal proceedings in January 2003. He conceded removability at an initial hearing in 2005 but requested asylum, withholding of removal, and protection under the United Nations Convention Against Torture. Because his application for asylum was filed more than a year after entry in 1997, he was forced to concede that he was statutorily ineligible for asylum. Alhaj nevertheless renewed his application for withholding of removal and relief under the Convention Against Torture.

In support of his application, Alhaj testified at a 2006 hearing in the immigration court that he was born in Yemen in 1974 and lived in that country for the first 23 years of his life. By 1995, Alhaj and a partner owned a retail shop in the capital city of Sana'a and sold clothing, perfume, and other cosmetic items. He recalled that in January or February 1995, a young woman entered his shop with an older man and an older woman. Thinking that the young woman "looked so nice and . . . looked like she was under persecution," Alhaj supposedly slipped a bottle of perfume and a note containing his telephone number into the bag holding the woman's purchases. Two days later, Alhaj said, the woman telephoned him to thank him for the gift. During the course of the ensuing conversation, the woman, Ekhlas Ahmed Ali, revealed that the older man with whom she had entered the petitioner's store was actually her husband and that she had been forced to marry him because the man's first wife, the older woman who was also with them at the shop, was unable to bear children. Alhaj said that over the next few months, he and Ekhlas continued to talk and, by April or May, had established a secret relationship. However, four months after they began seeing each other, he testified, two men sent by Ekhlas's husband lured him outside his shop, where they

struck him repeatedly with the butt of a gun, fired a number of shots between his legs, and delivered an oral message that Alhaj should no longer associate with another man's wife.

The petitioner further testified that, approximately two weeks later, Ekhlas telephoned the petitioner and explained that she needed to meet with him immediately. At the rendezvous, she informed him that she was pregnant with the petitioner's child. After receiving that news, and in light of the prior altercation with Ekhlas's husband's "representatives," Alhaj said that he tried to avoid going to his shop and seeing or telephoning Ekhlas as often as he had previously. Eventually, the petitioner testified, he sold his interest in the shop and, in July 1997, traveled to Germany to attempt to start a new life away from the man whose associates had threatened him. According to Alhaj, his efforts to relocate failed because of difficulty in mastering a new language, and he eventually returned to Yemen.

Once there, Alhaj supposedly asked Ekhlas to accompany him to England, where he hoped to start a new career and also have a better grasp of the language. She suggested instead that the couple attempt to move to the United States, where she already had family connections. As a result, Alhaj testified, he entered the United States on December 27, 1997, as a "nonimmigrant visitor for pleasure" – and subsequently overstayed his six-month departure date. In 1999, Ekhlas also traveled to the United States under the pretense of visiting her brother in this country. Once reunited here, Ekhlas and Alhaj telephoned Ekhlas's husband in Yemen, informed him that Ekhlas's child was conceived with the petitioner, not the husband, and convinced the husband to divorce Ekhlas. Alhaj and Ekhlas were then married in 2000 and had three additional children together. Meanwhile, Ekhlas's first husband declared her an outcast and, according to the petitioner, would kill both Ekhlas and Alhaj should the couple return to Yemen. As proof of the ex-husband's intentions, Ekhlas's brother testified that Ekhlas's ex-husband orchestrated the detention of Ekhlas's father in Yemen for two or three days before local government officials insisted upon his release.

At the conclusion of the evidentiary hearing, the immigration judge determined that Alhaj had failed to identify a distinct, persecuted social group to which he belonged. Consequently, the immigration judge denied the petitioner's claim for withholding of

removal. Further concluding that Alhaj failed to establish through hearing testimony that it was more likely than not that he would be tortured should he return to Yemen, the immigration judge also denied the request for relief under the Convention Against Torture. Finally, because Alhaj was unable to produce documentation that he had been approved for admission into another country other than Yemen, and because he refused to return to his homeland of his own accord, the immigration judge denied the petitioner the right to depart this country voluntarily. The Board affirmed the immigration judge's rulings in a separate written opinion, and Alhaj filed this petition for review.

### *DISCUSSION*

### I. Voluntary Departure

Alhaj contends that the immigration judge and Board erred in ruling that he was not entitled to depart voluntarily from the United States. Ordinarily, this court is without jurisdiction to review denials of voluntary departure decisions. *See* 8 U.S.C. §§ 1229c(f), 1252(a)(2)(B)(i). We may, however, exercise our jurisdiction over such claims that raise constitutional or legal questions. *See* 8 U.S.C. § 1252(a)(2)(D); *Patel v. Gonzales*, 470 F.3d 216, 219 (6th Cir. 2006). In this appeal, the petitioner submits that the immigration judge committed *legal* error by improperly requiring him to produce both a valid passport (which he did) *and* documentation sufficient to assure lawful entry into another country (which he did not), in order to be eligible for the discretionary relief sought.

Pursuant to the provisions of 8 U.S.C. § 1229c(b)(1), the Attorney General may allow an alien to depart from the United States at the alien's own expense after the conclusion of removal proceedings if certain findings can be made. Specifically, the Attorney General or his designate must find that:

> (1) the alien was present in the United States for at least one year prior to the filing of a Notice to Appear;
>
> (2) the alien has demonstrated good moral character for at least five years prior to applying for voluntary departure;
>
> (3) the alien is not removable as an aggravated felon or as a spy, terrorist, or Nazi; and

(4) the alien has established "by clear and convincing evidence" that the alien has both the means and the intention to depart the United States.

The necessary "clear and convincing evidence of the means to depart" requires "presentation by the alien of a passport *or* other travel documentation sufficient to assure lawful entry into the country to which the alien is departing." 8 C.F.R. § 1240.26(c)(2) (2008) (emphasis added).

The petitioner contends that regulation's use of the disjunctive "or" suggests that the immigration judge committed a mistake of law in demanding that he produce *both* a passport *and* a visa before becoming eligible for a grant of voluntary departure. This argument rests on a misreading of the regulation, however. What is required under section 1240.26(c)(2) is authorization to enter the country to which an alien is voluntarily departing. Were the petitioner in this case returning to Yemen, the country of removal designated by the immigration judge, his passport alone would be sufficient to support a grant of voluntary departure. But, because Alhaj refused to accept removal to Yemen, he was required to designate an alternate destination and present documentation permitting entry into that country. Hence, his presentation of the passport alone was insufficient to assure the immigration judge that the petitioner would be allowed permanent entry into another country, and the immigration judge did not commit a "constitutional or legal error" in denying the request for voluntary departure. We therefore uphold the immigration judge's decision in this regard.

## II.  Withholding of Removal

The petitioner also contests the decision of the immigration judge, upheld by the Board, that he was not entitled to withholding of removal. When, as in this case, the Board issues its own separate opinion after reviewing the decision of an immigration judge, the appellate court treats that Board ruling as the final agency determination. *See Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007). We then review all legal determinations made in such a Board ruling *de novo* and grant substantial deference to the Board's interpretation of the Immigration and Nationality Act and the Act's accompanying regulations. *See id.* Moreover, the factual components of such an administrative ruling must be sustained if the determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). "Under this

deferential standard, we may not reverse the Board's determination simply because we would have decided the matter differently." *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001) (per curiam) (citing *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998)). Rather, to overturn such a factual determination, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Elias-Zacarias*, 502 U.S. at 481 n.1.

Pursuant to the provisions of 8 U.S.C. § 1231(b)(3)(A), "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." Thus, in order to qualify for withholding of removal, the petitioner "must establish that there is a clear probability that he will be subject to persecution if forced to return to the country of removal." *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004). To make such a showing, a petitioner "must demonstrate that 'it is more likely than not' that he or she will be persecuted upon return." *Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005) (quoting 8 C.F.R. § 1208.16(b)(2)).

Clearly, Alhaj cannot claim that he, a Muslim and native Yemeni, would "more likely than not" be persecuted upon a return to Yemen because of his race, religion, or nationality. Moreover, he identifies no political opinion or position that would subject him to different treatment. As a result, he maintains only that the expected persecution he would suffer in his homeland would result from his membership in a particular social group. In support of that argument, Alhaj suggests that his wife is a member of such a group – the group of young women forced to marry older men – and that his association with his wife results in his membership in the group as well. Without regard to whether such a grouping would even meet the criteria of "a particular social group" entitled to protection under the Immigration and Nationality Act, *see, e.g.*, *Castellano-Chacon v. INS*, 341 F.3d 533, 546 (6th Cir. 2003) (defining "the term 'particular social group' as composed of individuals who share a 'common, immutable characteristic'"), or whether Alhaj's attempted formulation of a transitive property of persecution is valid, the fundamental basis of the petitioner's argument in this regard is so flawed that it dooms his prospects for success on the issue.

As noted by the government, any persecution suffered by or threatened toward Alhaj is not the result of either Ekhlas's first marriage or of the petitioner's opposition to the

practice of older Yemeni men forcing younger women to marry them. Instead, the purported violence displayed toward Alhaj by Ekhlas's ex-husband is solely in the nature of a personal vendetta against the petitioner for carrying on an affair and conceiving a child with his then-wife. Because Alhaj thus cannot establish that any past or future mistreatment resulted or will result from his "race, religion, nationality, membership in a particular social group, or political opinion," the restrictions on the removal of an alien who overstays his visitation period in this country do not come into play and the Board did not err in denying withholding of removal.

### III. Relief Under the United Nations Convention Against Torture

The petitioner additionally requested relief under the provisions of the United Nations Convention Against Torture. To obtain withholding of removal under that convention, "[t]he burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). "Torture," in any of its myriad manifestations, must entail the intentional infliction of severe mental or physical pain upon an individual "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).

The potential harm that might be visited upon Alhaj upon his return to Yemen does not constitute "torture" under the Convention because it does not originate from pain or suffering either initiated by a public official or inflicted with the consent or acquiescence of such an official. Furthermore, even though Alhaj asserts that his wife's ex-husband is a powerful man within Yemen, it is also true that when that ex-husband allegedly arranged for the detention of Ekhlas's father, government officials intervened and released Alhaj's father-in-law unharmed after two or three days of incarceration. Any such treatment by a non-governmental entity, rectified by official government actors, does not constitute torture under the Convention Against Torture and, thus, does not entitle the petitioner to the relief he now seeks.

### *CONCLUSION*

The Board's denial of the petitioner's request for voluntary departure involved no error. We lack jurisdiction to review the factual aspects of the Board's decision, *i.e.*, the factual findings that Alhaj did not produce the necessary documentation for entry into another country and that Alhaj also did not designate another country as a final destination.

Furthermore, Alhaj has failed to establish his membership in a particular social group targeted for persecution within Yemen. In fact, the record before this court establishes nothing more than a situation in which an extra-marital affair has predictably angered at least one of the principals involved. Because such a personal vendetta does not constitute persecution under the Immigration and Nationality Act, Alhaj's claim for withholding of removal is without merit.

Finally, the record establishes that neither the Yemeni government nor any person acting in an official governmental capacity has tortured, threatened, or acquiesced in such torture or threats of torture against the petitioner, his family, or his in-laws. He has, therefore, failed to establish entitlement to relief under the United Nations Convention Against Torture.

For these reasons, we DENY Alhaj's petition for review.