NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0128n.06

**No. 16-3647**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

EULOGIO HERNANDEZ-BOX,

  Petitioner,

    v.

JEFF B. SESSIONS, U.S. Attorney General,

  Respondent.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
Feb 27, 2017
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

---

BEFORE: SILER, MOORE, and GRIFFIN, Circuit Judges.

  GRIFFIN, Circuit Judge.

  Petitioner Eulogio Hernandez-Box, a Quiche-speaking Mayan Indian and native of Guatemala, entered the United States illegally in 2001. Nine years later, in 2010, he applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). The Immigration Judge (IJ) denied petitioner's application, and the Board of Immigration Appeals (BIA) dismissed the appeal. We lack jurisdiction to review petitioner's untimely application for asylum, and agree he has failed to meet his burden for withholding of removal or protection under the CAT. Accordingly, we dismiss in part and deny in part the petition for review.

I.

Under the Immigration and Naturalization Act (INA), an alien must prove by clear and convincing evidence that he filed his application for asylum within one year of his arrival to the United States. 8 U.S.C. § 1158(a)(2)(B). An exception applies, however, "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the [one-year] period." 8 U.S.C. § 1158(a)(2)(D). "Changed circumstances" that may excuse a delay include "[c]hanges in conditions in the applicant's country of nationality," "changes in applicable U.S. law," and "activities the applicant becomes involved in outside the country of feared prosecution that place the applicant at risk." 8 C.F.R. § 1208.4(a)(4)(i)(A) & (B). If the IJ agrees that changed circumstances exist, the alien bears the additional burden to demonstrate that he filed for asylum "within a reasonable period given those 'changed circumstances.'" 8 C.F.R. § 1208.4(a)(4)(ii).

Hernandez-Box concedes that he applied for asylum well outside the one-year window, but maintains the IJ erred in declining to apply the changed circumstances exception based on his testimony regarding increased crime and political violence in his home municipality of Aguacatan. This issue is beyond our jurisdictional reach.

"Under the REAL ID Act of 2005, we have jurisdiction to 'review asylum applications denied for untimeliness only when the appeal seeks review of constitutional claims or matters of statutory construction, not when the question is discretionary or factual.'" *Khozhaynova v. Holder*, 641 F.3d 187, 191 (6th Cir. 2011) (quoting *Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 502 (6th Cir. 2007)). "Challenges to the denial of an asylum application as untimely are often dismissed for lack of jurisdiction because they ask the court to reweigh the evidence in the

petitioner's favor." *Mandebvu v. Holder*, 755 F.3d 417, 425–26 (6th Cir. 2014). Hernandez-Box asks us to do just that.

Specifically, he contends the IJ "should have . . . more thoughtfully considered" his testimony concerning an ongoing dispute between two Aguacatan political opponents, Pablo Escobar and Simon Gaspar. Petitioner testified that Escobar's supporters attacked his father on two separate occasions after he voted for Gaspar in the 2000 mayoral election. Hernandez-Box, then only fourteen years old, witnessed one of the beatings: "They arrived, they beat the hell out of my father, they hit him, they threatened that if my father does not support [Escobar], they are going to kill all of his children." Asked about the current state of affairs, Hernandez-Box explained that Escobar's followers now "target[] people walking on the street by themselves and ask for money. If you do not give them money, they hit you then leave you." Petitioner feared that if he returned to Aguacatan, he would be an attractive target. "They know I come from the United States and they are already there to demand money from me or they will kidnap me."

Although the IJ did not make an adverse credibility finding, she declined to credit petitioner's claim that he would face persecution if returned to Guatemala. She observed that while petitioner "alluded [to] some increase in violence," he "provided no specifics as to how that related to his claim, nor did he corroborate any increase in violence with any supporting documents." Further, when asked why he did not petition for asylum earlier, Hernandez-Box "testified he did not file sooner because he did not know how." "Ignorance of the law," she noted, "does not excuse late filing."

A finding of changed circumstances is generally "a predominantly factual determination, which will invariably turn on the facts of a given case." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006) (citation omitted). Challenges based on evidence of increased violence and

unfamiliarity with the legal system fall comfortably within the category of "predominantly factual determination[s]"—not claims based on constitutional rights or matters of statutory construction. *See id.* (claims concerning escalated violence "would require us to consider the evidence regarding the nature of the violence," and are therefore unreviewable); *see also Khozhaynova*, 641 F.3d at 191–92 (addressing unfamiliarity with immigration law); *Shkulaku-Purballori*, 514 F.3d at 502 (declining to consider as issues of fact petitioner's assertion that "the cause of his late filing was not his own fault, but the fault of scheduling at the immigration court in Detroit," and his mistaken belief "that an asylum application had to be filed in front of a judge"). Similarly, here, evaluating petitioner's claim that the IJ conducted a less-than-thoughtful review of the evidence would "invariably turn on the facts" presented before her and is therefore left to the agency's sole discretion. *Almuhtaseb*, 453 F.3d at 748 (citation omitted).

Hernandez-Box attempts to recast his claim as a question of statutory interpretation based on our decision in *Mandebvu*. There, our court determined it had jurisdiction to consider the denial of an asylum application as untimely because "the IJ improperly required that [the petitioners] prove something not required by the statute." 755 F.3d at 426. In particular, the IJ interpreted the "changed circumstances" exception "to require that an asylum applicant, in order to excuse a delay in filing . . . demonstrate that he would not have been eligible for asylum had he applied before the change in country conditions." *Id.* The Mandebvu family argued they could satisfy the changed circumstances exception "even if they would have been eligible for asylum before the events that changed their circumstances." *Id.* We found this issue reviewable as a "matter[] of statutory construction," *id.* at 425 (quoting *Khozhaynova*, 641 F.3d at 191), because the court could resolve it while accepting as true "the IJ's factual conclusion that there [had been] only an 'incremental change'" in the conditions of the petitioners' home country of

Zimbabwe, and the Mandebvus' claim that "they were eligible for asylum both before and after the events of [the] 2008 [Zimbabwe election]." *Id.* at 426. Thus, the Mandebvus' appeal was within our jurisdiction because it "d[id] not require this court to revisit the evidence submitted in support of their claim." *Id.*

But reviewing petitioner's appeal in this case does. The IJ here did not make any factual findings in Hernandez-Box's favor, and, as a result, no statutory question remains if we accept her findings as true. Even under *Mandebvu*, if an applicant's claims of escalated violence "would require us to consider evidence regarding the nature of the violence . . . to determine whether, as a matter of fact," violence had indeed increased and may excuse the delay, the appeal is outside our jurisdiction. *Id.* (quoting *Almuhtaseb*, 453 F.3d at 748). We will not entertain a challenge that requires us to "reweigh the evidence in [Hernandez-Box's] favor." *Id.*

"Because [petitioner's] claim relies on contesting these sorts of factual determinations rather than on statutory construction or a constitutional claim, we are without jurisdiction to review the BIA's determination denying [him] asylum." *Almuhtaseb*, 453 F.3d at 748 (footnote omitted). Accordingly, we dismiss in part Hernandez-Box's petition for review.[1]

---

[1]Insofar as Hernandez-Box argues he has demonstrated extraordinary circumstances excusing his delay, this argument is not properly before us. "A court may review a final order of removal only if the alien has exhausted all administrative remedies available [to him] as of right." 8 U.S.C. § 1252(d)(1). "Exhaustion of administrative remedies requires the petitioner to first argue the claim before the IJ or the BIA before an appeal may be taken." *Csekinek v. INS*, 391 F.3d 819, 822 (6th Cir. 2004). Further, the petitioner must have "reasonably developed" the claim in his brief before the BIA. *Khalili v. Holder*, 557 F.3d 429, 433 (6th Cir. 2009). With respect to his extraordinary circumstances claim, Hernandez-Box did neither. The same goes for his claim that the IJ should have "conducted further inquiry" into his competency to participate in removal proceedings—an assertion petitioner makes for the first time on appeal. Because Hernandez-Box failed to exhaust his administrative remedies, we are precluded from reaching these issues.

II.

Petitioner next contests the agency's decision denying him withholding of removal and protection under the CAT. On these issues, we review the IJ's and BIA's legal determinations de novo and their findings of fact for substantial evidence. *Mandebvu*, 755 F.3d at 424. Substantial-evidence review is highly deferential, "meaning that this court may overturn the IJ's factual findings only if 'the evidence not only *supports* reversal, but *compels* it,' such that no reasonable factfinder could have made the finding that the IJ did." *Yousif v. Lynch*, 796 F.3d 622, 628 (6th Cir. 2015) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992)) (brackets omitted). "Where the Board affirms the IJ's ruling but adds its own comments, we review both the IJ's decision and the Board's additional remarks." *Id.* (citation omitted).

"There are two provisions under which an alien can request withholding of removal: § 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), or the CAT." *Almuhtaseb*, 453 F.3d at 749 (footnote omitted). We begin with Hernandez-Box's INA petition.

A.

To qualify for withholding of removal under the INA, petitioner must establish it is more likely than not that he will be persecuted upon returning to Guatemala "on account of [his] race, religion, nationality, membership in a particular social group, or political opinion." *Umaña-Ramos v. Holder*, 724 F.3d 667, 674 (6th Cir. 2013) (quoting 8 U.S.C. § 1231(b)(3)(A)). Hernandez-Box can make this showing in two ways. First, if he demonstrates past persecution on account of a protected ground, we must presume his "life or freedom [will] be threatened in the future." 8 C.F.R. § 208.16(b)(1)(i). Second, if he cannot demonstrate past persecution, he must show it is more likely than not that his life or freedom will be threatened in the future on

account of a protected ground if he is returned to Guatemala. 8 C.F.R. § 208.16(b)(2). In this case, the IJ found Hernandez-Box did not demonstrate either.

Regarding past persecution, the IJ noted "it was [petitioner's] father who was harmed in the past and he himself experienced no harm." And even on this point, evidence demonstrating the attacks were politically motivated "was weak and somewhat implausible." For example, Hernandez-Box "testified his father was harmed by Pablo Escobar supporters due to the fact that Pablo Escobar lost the 2000 election, when, in fact, the record reflects that Pablo Escobar won the 2000 election." Turning to likelihood of future harm, the IJ found that although petitioner identified several grounds for protection (his race as a Quiche-speaking Mayan, his membership in a social group opposed to Escobar, and his political opinion opposed to Escobar), his testimony regarding each protected ground was inconsistent, confusing, and unsupported. The BIA agreed with both assessments.

Petitioner does not dispute the agency's finding that he is not entitled to a presumption of future persecution. He instead contends the IJ erred in finding that he failed to demonstrate a well-founded fear of future persecution based, in part, on evidence of the politically-motivated attacks against his father. We disagree.

At the outset, "the mistreatment [petitioner] allegedly suffered might not be severe enough to constitute persecution." *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2011). Persecution entails "more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Id.* (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998)). Its future likelihood must also be more than "a generalized or random possibility." *Almuhtaseb*, 453 F.3d at 750 (citation omitted). "[A]n alien 'must show that she is at particular risk—that her

predicament is appreciably different from the dangers faced by her fellow citizens.'" *Id.* (citation and brackets omitted). Here, Hernandez-Box witnessed only one of two attacks on his father, during which Escobar's supporters "threatened that if [his] father does not support [Escobar], they are going to kill all of his children." While we do not make light of the impact this event had on petitioner, then only fourteen years old, we cannot conclude the IJ erred in acknowledging that he was not the "primary target[]." *See Bonilla-Morales*, 607 F.3d at 1136–37 (declining to find past persecution where the petitioner's "family members were the primary targets" of gang violence). Petitioner's own testimony supports a finding that this was an "isolated incident" of "intimidation, unaccompanied by any physical punishment" directed at him personally. *Mikhailevitch*, 146 F.3d at 390.

Petitioner's claims were also inconsistent with his own documentary evidence—giving the IJ another reason to discount his testimony. Under the REAL ID Act, if an IJ concludes an applicant for withholding of removal should provide corroborating evidence, then "corroborating evidence is required"—even where she finds the applicant otherwise credible, as the IJ did in this case. *Urbina-Mejia v. Holder*, 597 F.3d 360, 367 (6th Cir. 2010).[2] Hernandez-Box's documentary evidence did more to contradict his testimony than corroborate it. For example, he claimed Escobar's supporters beat his father twice after losing the 2000 election, elaborating further that fighting broke out due to Escobar's refusal to "giv[e] up his office" to Gaspar, the winning candidate. Yet, as the IJ noted, petitioner submitted an article stating Escobar won that election. Petitioner also testified that Gaspar won the 2004 election, when the same article indicates Escobar won reelection that year. Other articles he submitted also characterized Escobar as a target of political persecution, not a perpetrator.

---

[2]Corroborating evidence may not be required if the applicant "cannot reasonably obtain" it. *Urbina-Mejia*, 597 F.3d at 367. Hernandez-Box, however, did not invoke this exception.

Still, "[g]iven his young age" at the time of the 2000 election, the IJ "gave [petitioner] the benefit of the doubt" and found him "generally credible." But this finding did not permit her to overlook the fact that petitioner's father failed to confirm his story: "There was an affidavit in Exhibit 4 from [Hernandez-Box's] father; however, that affidavit included no details about the harm inflicted on [his] father in 2000 or 2001 and, frankly, provided no details that corroborated the [petitioner's] claim."[3] This omission is significant. The attacks on petitioner's father are the base upon which he founds his claim of political persecution, and "the failure to discuss th[ose] incident[s] in any detail is an important missing piece of information." *See Lin v. Holder*, 565 F.3d 971, 977 (6th Cir. 2009). Moreover, petitioner submitted no evidence corroborating his assertion that violence, politically-based or otherwise, was on the rise in Aguacatan.

As for the non-political ground for protection, petitioner's race as a Quiche-speaking Mayan, substantial evidence supports the IJ's finding that petitioner's testimony was inconsistent and unsupported. Hernandez-Box did at times attribute the political hostility toward his family to their identity as Quiche speakers: "Well, they threatened the Quiche speakers by saying, you should come help us and Pablo Escobar so we can remove Simon Gaspar from office. If not, we will kill you." Later, however, petitioner explained that community members and local police are currently protecting his father—a fellow Quiche speaker—from further harm. Yet Hernandez-Box also believed these same forces could not protect him, because he is at heightened risk as an individual who "has . . . left the country." "I fear returning because they will hear that I am back in town. . . . They know I am from the United States and they . . . [will] demand money from me or . . . kidnap me."

---

[3]Beyond failing to mention the attacks, petitioner's father dated Aguacatan's political infighting back to 2004, giving that year as the date his son "fled to the United States . . . as a consequence of the violence and insecurity."

Petitioner's "fear of crime . . . and economic and environmental problems" may be "legitimate," but it is "not relevant to his fear of future . . . persecution" based on his Quiche-speaking Mayan ancestry. *Koliada v. INS*, 259 F.3d 482, 488 (6th Cir. 2001); *see also Almuhtaseb*, 453 F.3d at 750 (finding fear of shootings, bombings, lack of infrastructure and access to medical care too "generalized" to constitute persecution). Insofar as returning from the United States increases the risk of harm to Hernandez-Box, this fact is also irrelevant because "criminal exploitation motivated by the perceived wealth of former inhabitants of the United States is not persecution based on a protected ground." *Sanchez-Robles v. Lynch*, 808 F.3d 688, 692 (6th Cir. 2015) (citation omitted). Finally, apart from his contradictory testimony, Hernandez-Box offered no corroborating evidence to support the only claim that is relevant: his assertion that Quiche-speaking Mayans are mistreated in Guatemala.

On the whole, this evidence does not compel the conclusion that Hernandez-Box will more likely than not face persecution if deported to Guatemala. Accordingly, we deny his petition for withholding of removal under the INA.

B.

To prevail on a petition for withholding of removal under the CAT, petitioner must prove "it is more likely than not that he . . . would be tortured if removed" to Guatemala. *Shkulaku-Purballori*, 514 F.3d at 503 (citation omitted). "Torture" is "the intentional infliction of severe mental or physical pain upon an individual 'by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" *Alhaj v. Holder*, 576 F.3d 533, 539 (6th Cir. 2009) (quoting 8 C.F.R. § 208.18(a)(1)). Acts amounting to torture are "extreme"; they do not include "lesser forms of cruel, inhuman, or degrading treatment or punishment." *Almuhtaseb*, 453 F.3d at 751 (quoting 8 C.F.R. § 1208.18(a)(2)).

Hernandez-Box's fear that he may become the victim of an extortion attempt does not establish a "particularized threat of torture." *Id.* (citation omitted). Crime victimization by a non-government actor is not "an extreme form of cruel and inhuman treatment." 8 C.F.R. § 1208.18(a)(2); *see also Palma-Campos v. Holder*, 606 F. App'x 284, 287 (6th Cir. 2015) ("[A] general fear of crime and economic problems is not sufficient for withholding of removal under the CAT." (internal quotation marks omitted)). Nor is it clear from the record that the Guatemalan government instigates or tolerates such conduct. Petitioner in fact testified it does not. He stated police now protect his father and other Quiche speakers from Escobar's supporters. The only other evidence he offers is the State Department's 2012 Human Rights Report on Guatemala, which indicates indigenous Mayan communities face economic and social marginalization, as well as "a lack of public infrastructure," "poor roads and limited access to running water and electricity." Again, these concerns may be "legitimate," but they bear no relevance in proving a threat of persecution, *see Koliada*, 259 F.3d at 488, to say nothing of torture.

Because the evidence does not compel the conclusion that petitioner will more likely than not be tortured if removed, we deny his petition for protection under the CAT.

III.

For these reasons, we dismiss in part, and deny in part, Hernandez-Box's petition for review.