NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0500n.06

Case No. 23-3280

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>

MARIA ISABEL ESQUIVEL BLANCAS;
JENIFER VILLEGAS ESQUIVEL,

     Petitioners,

v.

MERRICK B. GARLAND, Attorney General,

    Respondent.

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

**FILED**
Dec 05, 2023
KELLY L. STEPHENS, Clerk

ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS

OPINION

</td></tr>
</table>

Before: BOGGS, READLER, and DAVIS, Circuit Judges.

**BOGGS, Circuit Judge.** Maria Isabel Esquivel Blancas, a native and citizen of Mexico, petitions this court for review of a decision of Board of Immigration Appeals (BIA) denying her applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). *See* 8 U.S.C. §§ 1158, 1231(b)(3); 8 C.F.R. § 1208.16. We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

**I**

In September 2014, Esquivel Blancas and her minor daughter, Jenifer Villegas Esquivel,[1] requested admission into the United States. The Department of Homeland Security initiated removal proceedings against them under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as immigrants who, at the

---

[1] Jenifer Villegas Esquivel, as the minor daughter of Esquivel Blancas, is included in her mother's asylum and withholding or removal application. *See* 8 C.F.R. § 1208.3(b)(1).

time of application for admission, were not in possession of valid entry documents. Esquivel Blancas, with the assistance of counsel, conceded removability. In April 2015, she filed for asylum and withholding of removal and protection under CAT based on her membership in a particular social group, which she later defined as being part of "the family of Esquivel Villegas."[2]

At her removal hearing in July 2019, Esquivel Blancas testified that she and her daughter had lived with Esquivel Blancas's grandparents in Tuxpan, a rural town in Michoacan, Mexico. In 2012, two years before she left Mexico, authorities had discovered six large graves filled with dismembered and burned human remains on land owned by her common-law husband's father, Emiliano Villegas, and located fifteen minutes from her grandparents' home. The clandestine graves were discovered as a result of military officers capturing two local criminals, El Zarco and El Vampiro. Villegas did not know that human remains had been buried on his land, and the authorities did not consider Villegas to be involved with El Zarco and El Vampiro. Regarding the bodies found in the graves, Esquivel Blancas testified that she did not know who they were or why they were killed. After the bodies were found, Esquivel Blancas feared that "something was going to happen" to her and her daughter. However, she testified that neither she nor her daughter were ever physically harmed or directly threatened while she lived in Mexico.

Esquivel Blancas further testified that two years later, in 2014, unknown "strangers" went to the home of Elvia Maya, a neighbor and "distant" aunt, and threatened to take Maya's child.

---

[2] The immigration court refers to the particular social group as the family of "Esquivel Viejas." In the briefing before this court, petitioner's counsel also refers to the family name as "Esquivel Viejas." But the correct family name is "Esquivel Villegas," as confirmed by the BIA order; the asylum and withholding application filed by Esquivel Blancas; the birth certificates of the children of Esquivel Blancas; and a signed statement from her father-in-law. Our docket correctly lists the daughter's name as Jenifer Villegas Esquivel. When quoting to the IJ opinion we have replaced "Esquivel Viejas" with "Esquivel Villegas" to correctly reflect the particular social group of Esquivel Blancas's petition.

Fortunately, Maya's child was not kidnapped, and Esquivel Blancas was unaware of any other children being kidnapped from her hometown. But Esquivel Blancas was scared that her child, Jenifer, might be kidnapped and so she decided to come to the United States.[3] She testified that she did not relocate within Mexico because "wherever you go down there, it's all the same. There's so much danger from drug traffickers and people who are killing people." Her grandparents continue to reside at the same home, her parents and two siblings remain in Tuxpan, her neighbor Elvia Maya and her child remain in the same area and have not had additional problems, and Emiliano Villegas remains in Mexico.

The IJ held that "the Esquivel Villegas Family" constituted a cognizable particular social group but that the record evidence failed to establish that Esquivel Blancas had suffered any past harm that rose to the level of past persecution based on her membership in that family. While the IJ found that Esquivel Blancas was a credible, "sincere, candid, and responsive" witness, she held that Esquivel Blancas "essentially fears being a victim of crime, and she fears something happening to her children," but that this fear did not have any nexus to her being a member of the Esquivel Villegas family. Therefore, the IJ held that Esquivel Blancas did not meet her burden of proof for asylum, withholding of removal, or CAT. The BIA affirmed without opinion, and Esquivel Blancas timely filed this petition for review.

## II

When the BIA affirms the IJ's decision without a separate opinion, 8 C.F.R. § 1003.1(e)(4), we review the IJ's decision as the final agency decision. *See Hassan v. Gonzales*, 403 F.3d 429, 433 (6th Cir. 2005). We evaluate factual findings using the substantial-evidence standard. *Zhao*

---

[3] Her common-law husband, Jose Villegas Maya, had come to the United States to work several years earlier. He had no prior problems in Mexico.

*v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). Such findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (quoting 8 U.S.C. § 1252(b)(4)(B)). Under this highly deferential review, we accept an agency's findings of fact if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Guzman-Vazquez v. Barr*, 959 F.3d 253, 259 (6th Cir. 2020) (citations omitted). This includes the agency's finding that the applicant did not establish a nexus between persecution and a protected ground. *Turcios-Flores v. Garland*, 67 F.4th 347, 357 (6th Cir. 2023) (citation omitted).

### A. Asylum

To be eligible for asylum on the basis of well-founded fear of future persecution, an applicant must establish that 1) she has a fear of persecution in her country on account of race, religion, nationality, membership in a particular social group, or political opinion; 2) there is a "reasonable possibility" of suffering such persecution that if she were to return to her country; and 3) she is unable or unwilling to return to that country because of such fear. *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998). To show membership in a particular social group, an applicant must show "that the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Turcios-Flores,* 67 F.4th at 357. Here, the IJ recognized Esquivel Blancas's proposed social group of "the Esquivel Villegas family" as a cognizable particular social group and this is not contested on appeal.

Esquivel Blancas must show that she was persecuted "on account of" membership in her family. 8 U.S.C. § 1101(a)(42)(A). Referred to as a "nexus determination," she must demonstrate that her membership in her family served as "one central reason" for her persecution. *Turcios-*

*Flores*, 67 F.4th at 357. While "persecution" is not statutorily defined, this court has held that persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch*, 146 F.3d at 390. If past persecution is established, it creates a rebuttable presumption that an applicant faces a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). Here the IJ held that there was no evidence of any past persecution. This finding is supported by substantial evidence, as the discovery of clandestine graves on her father-in-law's land and the fact that her neighbor was threatened by strangers do not establish harm to Esquivel Blancas. Nothing compels this court to conclude otherwise, as Esquivel Blancas has not presented any other evidence that that she suffered past persecution.

Absent past persecution, an asylum applicant must establish that she has a well-founded fear of future persecution that is both "subjectively genuine and objectively reasonable." *Stserba v. Holder*, 646 F.3d 964, 972 (6th Cir. 2011) (quoting *Daneshvar v. Ashcroft*, 355 F.3d 615, 623 (2004)). While the IJ had "no doubt [that Esquivel Blancas] has a subjective fear of returning to Mexico," she held that "there was no evidence based on respondent's testimony and other evidence in the record that her fear of harm is tied to her family relationship." Esquivel Blancas has presented no evidence that her fears of criminals, who dumped bodies in clandestine graves, and strangers, who threatened a neighbor who was also a distant relative, are related to membership in her family. Lacking any such proof, Esquivel Blancas has failed to meet the nexus requirement that her fear of future harm in Mexico was objectively related to membership in her family.

**B. Withholding of Removal**

To establish entitlement to withholding of removal, an applicant must show that there is a "clear probability" that she will be persecuted if forced to return to her country, and that the

persecution would be "on account of race, religion, nationality, membership in a particular social group, or political opinion." *Umaña-Ramos v. Holder*, 724 F.3d 667, 674 (6th Cir. 2013) (quoting 8 U.S.C. § 1231(b)(3)(A)). Importantly, "[t]he 'clear probability' standard asks more of the applicant than the 'reasonable possibility' standard for obtaining asylum." *Pablo-Sanchez v. Holder*, 600 F.3d 592, 594 (6th Cir. 2010) (quoting *Daneshvar v. Ashcroft*, 355 F.3d 615, 623 (2004). Since Esquivel Blancas is not eligible for asylum, it follows that she cannot meet the higher standard of withholding or removal. *Mikhailevitch,* 146 F.3d at 391.

### C. Convention Against Torture

To succeed on a CAT claim, an applicant must prove that it is "more likely than not" that she will be tortured if removed to her native country. *Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 503 (6th Cir. 2007). "Torture" is defined as "the intentional infliction of severe mental or physical pain upon an individual 'by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" *Alhaj v. Holder*, 576 F.3d 533, 539 (6th Cir. 2009) (quoting 8 C.F.R. § 208.18(a)(1)). Esquivel Blancas is not entitled to relief under CAT as she failed to present any evidence that it is more likely than not that she would be tortured by, with the consent or acquiescence of, or with the willful blindness, of the government of Mexico.

### III

For the foregoing reasons, we DENY the petition for review.