*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0039p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

THAWATCHAI FOYTHONG,

                    *Petitioner*,

     *v.*

ERIC H. HOLDER, JR., Attorney General,

                    *Respondent*.

No. 13-3914

On Petition for Review of a Decision of the
Board of Immigration Appeals.
No. A099 184 003—Detroit.

Decided and Filed: February 27, 2014

Before: DAUGHTREY, SUTTON and DONALD, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Marshal E. Hyman, Russell Reid Abrutyn, MARSHAL E. HYMAN &
ASSOC., PC, Troy, Michigan, for Petitioner. Jamie M. Dowd, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

_____

## OPINION

_____

SUTTON, Circuit Judge. A citizen of Thailand, Thawatchai Foythong came to
the United States in August 2001 as a non-immigrant visitor—and a married man. He
did not leave when his visa expired in February 2002. In 2004, Foythong, still wedded
to Sukunya Pradithavanich, married a second woman, a United States citizen named
Nanette Langevin. Langevin filed a petition to adjust Foythong's status to "lawful
permanent resident" based on their marriage. AR 337.

1

After investigating the petition, the Department of Homeland Security issued a notice of intent to deny it on the ground that the marriage was a sham, arranged "for the purpose of . . . obtain[ing] immigration benefits." *Id.* at 339. In reaching this conclusion, the Department interviewed Foythong and Langevin separately and found "significant discrepancies" in their testimony. *Id.* at 337–38. The couple claimed to be living together, but they were not. Langevin said one thing about her employment history, but Foythong said another. Langevin said some things about their sexual relationship, but Foythong said other things. In response, Langevin withdrew the petition, and, perhaps unsurprisingly, the marriage later ended.

In 2010, Foythong got married again, this time to Petcharat Moi Clark. The timing was not auspicious. The nuptials took place on April 8, 2010, just twelve days before a scheduled removal hearing. At the hearing, Foythong requested relief based on his third marriage. Clark was a United States citizen, Foythong explained, and she had filed a petition with the Department of Homeland Security requesting a marriage-based visa on his behalf. Foythong made no mention of his first marriage or the Department's earlier finding about his second marriage. The immigration judge continued Foythong's hearing to allow him to submit evidence that this (most recent) marriage was bona fide.

In the interim, the Department of Homeland Security denied Foythong's newest visa petition. It refused to recognize the Clark marriage because he remained married to his first wife in Thailand and because Michigan does not recognize consular divorces, rendering ineffective Foythong's effort to divorce his Thai wife through the Thailand consulate in Chicago, Illinois. Making matters worse, far worse as it turns out, the Department denied the request on the ground that Foythong had a previous sham marriage to his name. According to the Department, the fraudulent marriage to Langevin precluded Foythong from *any* future adjustment of his immigration status based on a subsequent marriage, including his marriage to Clark.

The immigration judge upheld these determinations, and it ordered Foythong's removal from the United States. The Board of Immigration Appeals affirmed.

In June 2013, Foythong asked the Board to reopen his case. He explained that he had "legally and properly divorc[ed] his first wife, and [had] enter[ed] into a new marriage ceremony with [Clark]," his third wife. *Id.* at 16. The Board denied the motion on the ground that he had little probability of success in view of his prior sham marriage. Foythong now seeks review of that decision, claiming he is entitled to an adjustment of status based on his third marriage.

Foythong's application faces a serious, indeed dispositive, impediment: Congress has prohibited the approval of any visa petition where "the alien has previously . . . sought to be accorded[] an immediate relative or preference status as the spouse of a citizen of the United States . . . by reason of a marriage . . . entered into for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c). The statute imposes a one-strike rule, meaning that, after one prior finding of a sham marriage, the immigration authorities must reject all future efforts at an adjustment of status based on marital status. *See Ettienne v. Holder*, 659 F.3d 513, 515 (6th Cir. 2011). That prohibition ends the discussion. Foythong's second marriage was a sham because, as the Department of Homeland Security found and as Foythong has never disproved, he married Langevin "solely for the purpose of allowing [him] to evade the immigration laws." AR 339. However real, sincere, committed and otherwise bona fide Foythong's third marriage may be, it does not make him eligible for an adjustment of status. Under the immigration laws, a prior finding of a contrived marriage means the individual is free to seek a new spouse and to seek all of the benefits of a new marriage save one: American citizenship.

Foythong claims that it is the government's burden to prove the illegitimacy of his second marriage. That is beside the point and inaccurate to boot. It is beside the point because, as shown, the Department offered considerable evidence that Foythong's relationship with Langevin was not what he claimed it to be. It is inaccurate because, under the REAL ID Act of 2005, it is the *alien's* burden to establish that he "satisfies the applicable eligibility requirements" for relief from removal. 8 U.S.C. § 1229a(c)(4)(A). Foythong never met this burden. He may well have provided extensive evidence of the

validity of his current marriage to Clark—marriage certificates, tax documents, bank statements and the like.  But he never submitted anything to contradict the Department's findings about his marriage to Langevin.

Foythong persists that the Board failed to follow its own precedent in denying his application.  In doing so, he correctly points out that the Board "*may*" grant his motion to reopen removal proceedings based on his pending visa petition if the "evidence . . . reveals a reasonable likelihood that the statutory requirements for relief [from removal] have been satisfied." *Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1050 (6th Cir. 2007) (internal quotation marks omitted).  But he cannot meet this standard.  The immigration laws prohibit immigration authorities from adjusting the status of any alien who engaged in a sham marriage.  8 U.S.C. § 1154(c).  Put another way, he failed to meet the governing regulation's requirement that he, as someone applying for relief from removal, prove "by a preponderance of the evidence" that the grounds for denying his application under § 1154(c) "do not apply."  8 C.F.R. § 1240.8(d).  Having failed to meet this requirement, his invocation of the five-factor test in *Matter of Velarde-Pacheco*, 23 I. & N. Dec. 253, 256 (BIA 2002), goes nowhere.  One cannot satisfy that test in the absence of some likelihood of success on the merits.  *See Ilic-Lee*, 507 F.3d at 1050.  The Board thus did not abuse its discretion in rejecting his motion to reopen his removal proceedings.

For these reasons, we deny the petition for review.