**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DOMINGO QUEBRADO CANTOR, *Petitioner*, | No. 19-73085 |
| v. | Agency No. A200-885-573 |
| MERRICK B. GARLAND, Attorney General, *Respondent*. | OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted August 30, 2021
Seattle, Washington

Filed November 3, 2021

Before:  Michael Daly Hawkins, M. Margaret McKeown,
and Ronald M. Gould, Circuit Judges.

Opinion by Judge McKeown

**SUMMARY**[*]

**Immigration**

Granting Domingo Quebrado Cantor's petition for review of a decision of the Board of Immigration Appeals, and remanding, the panel held that the stop-time rule – which sets out the circumstances under which a period of continuous physical presence is deemed to end for cancellation of removal – is not triggered by a final order of removal.

Quebrado entered the United States in 2006.  In 2011, he was served a notice to appear lacking the time or place of his removal hearing, but later was served a notice with the date, time, and place of his hearing.  He was issued a final order of removal in 2014.  In 2018, the Supreme Court decided *Pereira v. Sessions*, 138 S. Ct. 2105 (2018), concluding that, in order to trigger the stop-time rule, a notice to appear must include the "time and place" of removal proceedings. Quebrado then moved to reopen before the BIA, arguing he was statutorily eligible for cancellation.  The BIA denied the motion, concluding that continuous physical presence ceases with a final order of removal – meaning that Quebardo fell short of the ten years of continuous physical presence required for cancellation.

In holding that a final order of removal does not trigger the stop-time rule, the panel explained that the statutory language of the rule, 8 U.S.C. § 1229b(d)(1), is

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

unambiguous in providing that a period of continuous physical presence is deemed to end upon the earlier of two events, which are spelled out in subsections (A) and (B). Under subsection (A), presence is deemed to end with the service of the notice to appear, and under subsection (B), it is deemed to end upon the commission of certain offenses. Observing that the stop-time rule includes no mention of a final order of removal as a triggering event, the panel explained that it was not the court's role to rewrite the statute.

The panel explained that neither subsection applied here. Under *Pereira*, the notice to appear failed to trigger the stop-time rule because it did not specify the time and date of proceedings. Moreover, because the Supreme Court held in *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021), that a notice to appear must be a single document, containing all the information Congress specified, the panel explained that the second notice sent to Quebrado did not cure the deficient notice to appear. The panel noted that all agreed that subsection (B) was inapplicable. Because neither subsection applied, the panel concluded that Quebrado's presence was not deemed to end and, as a result, his claim for cancellation facially satisfied the ten-year presence requirement.

Responding to the government's contention that the stop-time rule should be read expansively, the panel explained that the stop-time rule operates as an exception to the command that the presence requirement is satisfied upon ten years of continuous physical presence. Therefore, the proper inference is that Congress considered which events ought to stop the clock and settled on only two.

The government also suggested that Quebrado now found himself in an absurd situation: a notice to appear is

used to initiate removal proceedings; it should therefore be impossible for Quebrado's removal proceedings to have concluded – culminating in a final order of removal – without subsection (A) having been triggered.  In response, the panel explained that this improbable situation is entirely of the government's own making and that it is not the court's job to fashion a statutory backstop from whole cloth.  The panel quoted the Supreme court in *Niz-Chavez*: "If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them."  141 S. Ct. at 1486.

Finally, the panel rejected the government's argument that any error was harmless because Quebrado's motion was deficient for other reasons, observing that the court's review is limited to the legal reason given by the face of the BIA's decision.  Because the BIA did not address alternative grounds for denial, the panel remanded to the BIA for further proceedings consistent with this opinion.

## COUNSEL

Luis Cortes Romero (argued), Novo Legal Group PLLC, Kent, Washington; Elaine Ruth Fordyce, Law Office of Shara Svendsen PLLC, Mill Creek, Washington; for Petitioner.

Lance L. Jolley (argued), Trial Attorney; Anthony C. Payne, Senior Litigation Counsel; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

McKEOWN, Circuit Judge:

This appeal requires us to address, yet again, application of the "stop-time rule" in immigration proceedings. Nonpermanent residents subject to removal may apply to the Attorney General for cancellation of removal. To be eligible, a nonpermanent resident must have "been physically present in the United States for a continuous period of not less than 10 years." 8 U.S.C. § 1229b(b)(1)(A). The question is what circumstances serve to stop the accrual of time. By statute, nonpermanent residents cease to accrue physical presence (1) once they are "served a notice to appear" or (2) if they commit certain crimes. *Id.* § 1229b(d)(1). Domingo Quebrado Cantor ("Quebrado") alleges he was physically present in this country for twelve years when he sought to reopen his immigration proceedings to apply for cancellation of removal. The Board of Immigration Appeals ("BIA") saw it differently and denied Quebrado's request, reasoning that the stop-time rule was triggered when Quebrado received a final order of removal four years prior to his motion to reopen. By its terms, however, the stop-time rule applies to only the two circumstances set out in the statute, and a final order of removal satisfies neither. Because the BIA's decision was contrary to the text of the statute, we grant the petition and remand to the BIA for further proceedings.

**BACKGROUND**

Domingo Quebrado Cantor is a native and citizen of Mexico who entered the United States without inspection in 2006. The United States Department of Homeland Security commenced removal proceedings against him and served him with a notice to appear in 2011. The notice to appear

did not include the time or place of the proceedings; rather, Quebrado was directed to appear "on a date to be set at a time to be set." Quebrado was later served with a notice that specified a date, time, and place for his hearing. Quebrado appeared at the hearing. In due course, Quebrado conceded removability, and pursued asylum, voluntary departure, and Deferred Action for Childhood Arrivals. The immigration judge ("IJ") denied Quebrado's asylum application and ordered him removed if he failed to depart voluntarily. The BIA affirmed, and we denied Quebrado's petition for review.

In 2018, the Supreme Court concluded that, in order to trigger the stop-time rule, a notice to appear must include the "time and place" of the removal proceedings. *Pereira v. Sessions*, 138 S. Ct. 2105, 2113 (2018) (quoting 8 U.S.C. § 1229(a)(1)(G)(i)). Following this decision, Quebrado moved to reopen his immigration proceedings before the BIA for the purpose of applying for cancellation of removal. He argued that because his notice to appear lacked a time and place, it was defective and did not stop accrual of continuous physical presence. By Quebrado's calculation, he had accrued continuous physical presence since his arrival in the United States in 2006 and was statutorily eligible for cancellation of removal.

The BIA denied Quebrado's motion to reopen. The government argued that the subsequent notice of hearing received by Quebrado had cured any defect in the initial notice to appear. Somewhat presciently however, the BIA declined to adopt the government's argument. Rather, the BIA's sole basis for denying Quebrado's motion to reopen was its conclusion that "[c]ontinuous physical presence ceases to accrue at the entry of a final administrative decision." Because a final order of removal was issued for

Quebrado in 2014, the BIA determined that he "fell short of meeting the requisite continuous physical presence for cancellation of removal." We have jurisdiction to review Quebrado's petition because the BIA rested its denial of reopening on legal grounds. *See Bonilla v. Lynch*, 840 F.3d 575, 588 (9th Cir. 2016).

## ANALYSIS

Noncitizens subject to removal may apply for permission to remain in the United States so long as they meet the statutory criteria for cancellation of removal under 8 U.S.C. § 1229b. These noncitizens are eligible for cancellation of removal if, among other things, they have "been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." *Id.* § 1229b(b)(1)(A).

Historically, a noncitizen "continued to accrue time toward the presence requirement during the pendency of his removal proceedings." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1478–79 (2021). Some questioned, however, whether this practice could create an incentive to needlessly delay removal proceedings. *See id.* at 1479. "In [the Illegal Immigration Reform and Immigration Responsibility Act of 1996 ("IIRIRA"), 110 Stat. 3009–546], Congress responded to these concerns with a new 'stop-time' rule." *Id.* That rule provides:

> For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end (A) except in the case of an alien who applies for cancellation of removal under subsection (b)(2), when the alien is served a notice to appear under section 1229(a) of this

> title, or (B) when the alien has committed an offense referred to in section 1182(a)(2) of this title that renders the alien inadmissible to the United States under section 1182(a)(2) of this title or removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title, whichever is earliest.

8 U.S.C. § 1229b(d)(1).

Despite its apparent simplicity, the rule "has generated outsized controversy." *Niz-Chavez*, 141 S. Ct. at 1479. Recently, much of that controversy has focused on what constitutes "a notice to appear" within the meaning of subsection (A). The statute defines a notice to appear as a "written notice . . . specifying," among other things, the "time and place" of the noncitizen's removal hearing. 8 U.S.C. § 1229(a)(1). In defiance of this clear statutory instruction, the government's practice for many years was to issue notices that failed to specify these necessary details. *See Pereira*, 138 S. Ct. at 2111–12. The Supreme Court put an end to this practice in *Pereira* and *Niz-Chavez*, brushing aside the government's policy arguments and emphasizing that "pleas of administrative inconvenience" can "never 'justify departing from the statute's clear text.'" *Niz-Chavez*, 141 S. Ct. at 1485 (quoting *Pereira*, 138 S. Ct. at 2118).

In *Pereira*, the Court held that a notice that fails to designate the "time and place" of a removal hearing "is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule." 138 S. Ct. at 2114 (quoting 8 U.S.C. § 1229b(d)(1)). And, in the follow-on case—*Niz-Chavez*—the Court held that the government could not cure a deficient notice to appear by later sending a letter specifying the hearing's time and place, explaining that

subsection (A) unambiguously required the government to "serve 'a' notice containing all the information Congress has specified," and "not a mishmash of pieces with some assembly required." 141 S. Ct. at 1480 (quoting 8 U.S.C. § 1229b(d)(1)). In both decisions, the Court found the text of the statute to be dispositive. *See id.* at 1484 (applying "the statute's ordinary meaning"); *Pereira*, 138 S. Ct. at 2114 ("The statutory text alone is enough to resolve this case."). In so doing, the Court stressed that courts must "exhaust 'all the textual and structural clues'" bearing on a statute's meaning and emphasized that, where "exhausting those clues enables us to resolve the interpretive question put to us, our 'sole function' is to apply the law as we find it, not defer to some conflicting reading the government might advance." *Niz-Chavez*, 141 S. Ct. at 1480 (citation omitted).

The lesson of *Pereira* and *Niz-Chavez* is clear: the government may not "short-circuit the stop-time rule," *id.* at 1479, by invoking administrative deference in the face of an otherwise unambiguous statutory command. In other words, "[t]he language of [the] statute is controlling when the meaning is plain and unambiguous." *United States v. Maria-Gonzalez*, 268 F.3d 664, 668 (9th Cir. 2001) (citing *Aragon-Ayon v. I.N.S.*, 206 F.3d 847, 851 (9th Cir. 2000)); *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.").

The Court's emphasis on the language of this statute informs our analysis here. The precise question we consider is whether a final order of removal serves to invoke the stop-time rule. It does not. The language setting out the stop-time rule is unambiguous: a nonpermanent resident's

"period of continuous [physical presence] is 'deemed to end' upon the earlier of two events, which are spelled out in subsections (A) and (B) of the rule." *Jaghoori v. Holder*, 772 F.3d 764, 767 (4th Cir. 2014). Under subsection (A), a noncitizen's presence is deemed to end when the government serves a notice to appear. Under subsection (B), a noncitizen's presence is deemed to end upon the commission of an enumerated offense. Put another way, "time will stop accruing when the [nonpermanent resident] was (1) served with a notice to appear, or (2) when the [nonpermanent resident] committed certain removable offenses." *Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1020 (10th Cir. 2007). The stop-time rule includes no mention of a final order of removal as a triggering event and it is not our role to rewrite the statute.

Neither subsection (A) nor subsection (B) applies here. We know from *Pereira* and *Niz-Chavez* that subsection (A) has not been triggered. The first notice Quebrado received "failed to specify the date and time of [his] removal proceedings." *Pereira*, 138 S. Ct. at 2113. And the second notice, which informed Quebrado of the date and time of his removal proceeding, did not cure the government's failure to provide him with "'a' single document" containing "all the information Congress has specified." *Niz-Chavez*, 141 S. Ct. at 1480. All agree that subsection (B) is inapplicable, as Quebrado did not commit a removable offense. Because neither subsection of the stop-time rule applies, Quebrado's physical presence was not "deemed to end." 8 U.S.C. § 1229b(d)(1). His claim for cancellation of removal therefore, at least facially, satisfies § 1229b(b)(1)(A)'s ten-year continuing presence requirement.

Despite the Court's unmistakable teachings, the government apparently insists on "continu[ing] down the

same old path," *Niz-Chavez*, 141 S. Ct. at 1479, of ignoring the language of the stop-time rule.  "Straining to inject ambiguity into the statute," *Pereira*, 138 S. Ct. at 2116, the government argues the stop-time rule ought to be interpreted expansively.  According to the government: "While the 'stop-time rule' instructs that the period of continuous physical presence ends with the service of the notice to appear or the commission of certain crimes, it does not indicate that those are the only reasons the period of continuous physical presence may be deemed to end."  We disagree.

The presence requirement of the cancellation of removal statute is facially satisfied when a nonpermanent resident, such as Quebrado, has "been physically present in the United States for a continuous period of not less than 10 years." 8 U.S.C. § 1229b(b)(1)(A).  The stop-time rule operates as an exception to this otherwise unambiguous command, cutting short a nonpermanent resident's period of physical presence in two specifically enumerated circumstances.  *Id.* § 1229b(d)(1).  "When Congress provides exceptions in a statute, it does not follow that courts [or, by implication, agencies] have authority to create others.  The proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth."  *United States v. Johnson*, 529 U.S. 53, 58 (2000). The government's argument would turn this principle on its head, using the existence of two exceptions to authorize a third very specific exception.  But Congress, in its amendment to the statute, did not frame these two exceptions as illustrative examples of circumstances that "stop the clock" or otherwise indicate the stop-time rule ought to be read so expansively.  *See United States v. Hastie*, 854 F.3d 1298, 1304 (11th Cir. 2017) (noting that Congress may use certain words, such as "including," to indicate provisions are

intended to be illustrative rather than exhaustive). Therefore the "proper inference," *Johnson*, 529 U.S. at 58, is that Congress considered which events ought to "stop the clock" on a nonpermanent resident's period of continuous physical presence and settled, in its legislative judgment, on only two.

The government suggests that Quebrado now finds himself in an absurd situation. A notice to appear is used to initiate removal proceedings; it should therefore be impossible for Quebrado's removal proceedings to have concluded—culminating in a final order of removal— without subsection (A) having been triggered. But this improbable situation is entirely of the government's own making. The power to trigger subsection (A) rests in the government's hands—it can "stop the clock" at any time, simply by issuing a statutorily-compliant notice to appear. 8 U.S.C. § 1229b(d)(1). By neglecting to send Quebrado such a notice, the government failed to trigger the stop-time rule. *See Pereira*, 138 S. Ct. at 2113–14. It is not our job to fashion a statutory backstop from whole cloth. "If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez*, 141 S. Ct. at 1486.

Having concluded that the BIA's decision rests on legal error, the remaining question is whether to remand. The government argues that any error was harmless because Quebrado's motion to reopen was deficient for other reasons. That may or may not be true, but our review is limited to the legal reason given on "the face of the BIA's decision." *Lona v. Barr*, 958 F.3d 1225, 1234 (9th Cir. 2020). Because the BIA did not address alternate grounds

for denial of the motion, we remand to the BIA for further proceedings consistent with this opinion.

**PETITION GRANTED and REMANDED.**