# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 1, 2022

Lyle W. Cayce
Clerk

No. 19-60425

Gemima Ivette Parada; Stephanie Alexandra Parada,

*Petitioners*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of the Order of the
Board of Immigration Appeals
BIA No. A094 803 224
BIA No. A094 803 225

Before King, Duncan, and Engelhardt, *Circuit Judges*.

Per Curiam:*

Gemima Ivette Parada and her minor daughter, Stephanie Alexandra Parada, petition for review of the decision of the Board of Immigration Appeals denying their motion to reopen removal proceedings to allow them to apply for cancellation of removal. For the following reasons, the petition

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-60425

for review is GRANTED and the case is REMANDED to the Board of Immigration Appeals for further proceedings consistent with this opinion.

## I.

Gemima Ivette Parada and her minor daughter, Stephanie Alexandra Parada, are natives and citizens of El Salvador. Both entered the United States on September 6, 2006, without being admitted or paroled and were issued Notices to Appear at removal proceedings. Those notices did not specify a time or date for the proceedings. Instead, they were later sent multiple Notices of Hearing which ultimately led to a final hearing on the merits occurring on October 31, 2008.

Prior to that hearing, Parada conceded removability and filed an application for asylum and other relief on behalf of herself and her daughter. The Immigration Judge ("IJ") issued an oral decision denying Parada's application for asylum and other relief and ordered Parada and her daughter removed. That decision was affirmed by the Board of Immigration Appeals ("BIA") and their appeal was dismissed.

On September 18, 2018, Parada through counsel filed a motion to reopen the case. That motion was premised on the Supreme Court's decision in *Pereira v. Sessions*, where the Supreme Court held that a Notice to Appear lacking the time or place of removal proceedings does not trigger the so-called "stop-time rule" found in 8 U.S.C. § 1229b(d)(1)(A). 138 S. Ct. 2105, 2110 (2018). That rule is significant because "[n]on-permanent residents . . . who are subject to removal proceedings and have accrued 10 years of continuous physical presence in the United States, may be eligible for a form of discretionary relief known as cancellation of removal." *Id.* at 2109. However, under the stop-time rule, "that period of continuous physical presence is 'deemed to end . . . when the alien is served a notice to appear.'" *Id.* (quoting 8 U.S.C. § 1229b(d)(1)(A)). Parada asserted that their Notices to Appear,

2

No. 19-60425

which lacked the time and date of their hearing, did not activate the stop-time rule, that they had since accrued the necessary 10 years of physical presence, and that the case should therefore be reopened so that they could apply for cancellation of removal.

The BIA denied the motion to reopen. Relying in part on its recent decision in *Matter of Mendoza-Hernandez and Capula-Cortez*, 27 I. & N. Dec. 520 (BIA 2019), it ruled that the later sending of a Notice of Hearing (in this case, in 2007) with the time and date of removal proceedings cured the deficiencies in the Notice to Appear, activated the stop-time rule, and stopped the physical-presence clock, rendering Parada and her daughter ineligible for cancellation of removal. Parada timely filed a petition for review.

## II.

"This Court reviews the denial of a motion to reopen 'under a highly deferential abuse-of-discretion standard.'" *Barrios-Cantarero v. Holder*, 772 F.3d 1019, 1021 (5th Cir. 2014) (quoting *Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005)). Such an abuse of discretion occurs if the BIA's decision "is capricious, irrational, utterly without foundation in the evidence, based on legally erroneous interpretations of statutes or regulations, or based on unexplained departures from regulations or established policies." *Id.*

That standard is met here because the BIA's decision to deny Parada's motion to reopen was based on a legally erroneous interpretation of the statutes governing Notices to Appear and the stop-time rule. The Supreme Court has since reinforced the holding of *Pereira* and held—again—that to trigger the stop-time rule, a Notice to Appear must come in the form of "a single document containing all the information an individual needs to know about his removal hearing." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1478, 1486 (2021). That did not occur in this case, as the Notices to Appear served on Parada and her daughter did not contain the time or date for their

3

removal proceedings. Thus, because "[a] putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section 1229(a),' and so does not trigger the stop-time rule," *Pereira*, 138 S. Ct. at 2113–14 (quoting 8 U.S.C. § 1229b(d)(1)(A)), the deficient Notices to Appear received by the Paradas did not stop the clock for the Paradas.

The Government, in response, argues that another event triggered the stop-time rule: the final removal order. If so, then the Paradas' physical-presence clock would have stopped in 2008 when that order was issued, well short of the 10 years of continued physical presence required to be eligible for cancellation of removal. While that argument has some intuitive appeal, we do not divine the meanings of statutes by intuition but instead must "be sticklers when decoding legislative text." *Reed v. Taylor*, 923 F.3d 411, 415 (5th Cir. 2019). It is the "[t]ext [that] is the alpha and the omega of the interpretive process." *United States v. Maturino*, 887 F.3d 716, 723 (5th Cir. 2018). And the text regarding the stop-time rule is clear. Under the rule, time can be stopped in only two ways: "(A) . . . when the alien is served a notice to appear under [8 U.S.C. § 1229(a)], or (B) when the alien has committed an offense" enumerated in another section of the statute. 8 U.S.C. § 1229b(d)(1). That is all. Simply put, "[t]he stop-time rule includes no mention of a final order of removal as a triggering event." *Quebrado Cantor v. Garland*, 17 F.4th 869, 873 (9th Cir. 2021).

Instead, one of two keys must fit before the stop-time rule can be unlocked: service of a valid Notice to Appear or commission of an enumerated offense. The latter has not occurred here as no one has asserted that either of the Paradas has committed such an offense. And we have already concluded that the former has not occurred because the Notices to Appear served on the Paradas lacked the time and date of their hearing. Thus, the stop-time-rule box remained locked, the Paradas' clock never stopped,

and they accrued the necessary 10 years to satisfy the physical-presence requirement for cancellation of removal.

In so concluding, we agree with the Ninth Circuit which also held that "[b]y its terms . . . the stop-time rule applies to only the two circumstances set out in the statute, and a final order of removal satisfies neither." *Quebrado Cantor*, 17 F.4th at 871. We are further persuaded by the reasoning that "[t]he stop-time rule operates as an exception to [the] otherwise unambiguous command" that 10 years of physical presence satisfies the presence requirement for cancellation of removal. *Id.* at 874. And "[w]hen Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *United States v. Johnson*, 529 U.S. 53, 58 (2000).

To return to the analogy above, when Congress provided the two exceptions to the physical-presence requirement, it created all the keys that would fit. It did not additionally create a skeleton key that could fit when convenient. To conclude otherwise "would turn this principle on its head, using the existence of two exceptions to authorize a third very specific exception." *Quebrado Cantor*, 17 F.4th at 874. Instead, "the 'proper inference' is that Congress considered which events ought to 'stop the clock' on a nonpermanent resident's period of continuous physical presence and settled, in its legislative judgment, on only two." *Id.* (quoting *Johnson*, 529 U.S. at 58). Lacking either here, the BIA committed a legal error in concluding otherwise and finding that the Paradas did not satisfy the physical-presence requirement to be eligible for cancellation of removal.

No. 19-60425

## III.

For the foregoing reasons, the petition for review is GRANTED and the case is REMANDED to the BIA for further proceedings consistent with this opinion.