# Matter of Yun-Xia CHEN, Respondent

*Decided January 11, 2023*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  The "stop-time" rule under section 240A(d)(1) of the Immigration and Nationality Act, 8 U.S.C. 1229b(d)(1), is not triggered by the entry of a final removal order, but rather only by service of a statutorily compliant notice to appear or the commission of specified criminal offenses, in accordance with the plain language statutory analysis provided in *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021).

(2) Breaks in physical presence under section 240A(d)(2) of the Immigration and Nationality Act, 8 U.S.C. 1229b(d)(2), continue to be interpreted as distinct from termination of physical presence under the stop-time rule.  *Matter of Mendoza-Sandino*, 22 I&N Dec. 1236 (BIA 2000), *followed*.

(3)  A respondent claiming a fundamental change in law as the basis for seeking sua sponte reopening must also establish prima facie eligibility for the relief sought.  *Matter of G-D-*, 22 I&N Dec. 1132 (BIA 1999), *followed*.

FOR THE RESPONDENT:  Corey T. Lee, Esquire, New York, New York

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Ji Ho H. Jahng, Assistant Chief Counsel

BEFORE:  Board Panel:  GREER, SAENZ, and LIEBMANN, Appellate Immigration Judges.

GREER, Appellate Immigration Judge:

This case was last before us on July 26, 2005, when we dismissed the respondent's appeal from an Immigration Judge's decision ordering her removed.  Relying on *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021), the respondent has now filed a motion to reopen her removal proceedings to apply for cancellation of removal under section 240A(b)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229b(b)(1) (2018). The motion will be denied.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of the People's Republic of China who entered the United States on July 19, 2001.  The respondent attempted

entry into this country as a returning United States citizen, presenting an immigration officer with a United States passport issued in another individual's name.

The Department of Homeland Security ("DHS") charged the respondent with inadmissibility under section 212(a)(6)(C)(ii) of the INA, 8 U.S.C. § 1182(a)(6)(C)(ii) (2000), for falsely representing herself as a United States citizen, and section 212(a)(7)(A)(i)(I) of the INA, 8 U.S.C. § 1182(a)(7)(A)(i)(I) (2000), for seeking admission without valid immigration documents. The notice to appear, which was personally served on the respondent, did not comply with section 239(a)(1) of the INA, 8 U.S.C. § 1229(a)(1) (2000), because, although it specified that her first hearing would take place at the San Pedro, California, Immigration Court, it did not include the date and time of this hearing. *See* INA § 239(a)(1)(G)(i), 8 U.S.C. § 1229(a)(1)(G)(i) (requiring a notice to appear to specify the "time and place" of the initial hearing).

The San Pedro Immigration Court served a notice of hearing on the respondent with the time and place of her initial hearing, and the respondent appeared for this hearing as scheduled. Venue was changed to the New York, New York, Immigration Court. The respondent conceded removability and applied for relief from removal. The Immigration Judge found the respondent removable as charged, denied her applications for relief, and ordered her removed to China. In 2005, we dismissed the respondent's appeal from the Immigration Judge's decision, resulting in an administratively final order of removal. *See* 8 C.F.R. § 1241.1(a) (2021).

On July 19, 2021, the respondent moved to reopen her removal proceedings, subsequent to the issuance of *Niz-Chavez*, which the Supreme Court of the United States issued on April 29, 2021. The respondent requests that we reopen on our own motion under 8 C.F.R. § 1003.2(a) (2021).[1] She argues that pursuant to *Niz-Chavez* her noncompliant notice to appear did not trigger the so-called "stop-time" rule under section 240A(d)(1) of the INA, 8 U.S.C. § 1229b(d)(1) (2018), and thus she continues to accrue continuous physical presence in the United States for purposes of cancellation of removal under section 240A(b)(1)(A) of the INA, 8 U.S.C. § 1229b(b)(1)(A), even though she is subject to a final order of removal. She asserts that she can therefore establish the requisite 10 years of continuous physical presence.

DHS does not argue that the respondent ceased accruing continuous physical presence in this case. Instead, DHS argues that the motion should

---

[1]  The respondent's motion is untimely. 8 C.F.R. § 1003.2(c)(2)(2021). Neither the respondent nor DHS addressed timeliness, beyond presenting arguments related to whether the respondent merits sua sponte reopening. We need not reach whether any exception to the timeliness bar applies because we resolve the motion on other dispositive grounds.

be denied because the respondent did not otherwise demonstrate prima facie eligibility for cancellation of removal.

Our adjudication of these two issues raised by the parties is dispositive of the motion. Accordingly, we do not reach other arguments made on appeal.

## II.  ANALYSIS

### A.  Applicability of the stop-time rule

To be eligible for cancellation of removal under section 240A(b)(1) of the INA, 8 U.S.C. § 1229b(b)(1), an applicant must establish, among other things, that she "has been physically present in the United States for a continuous period of not less than 10 years." INA § 240A(b)(1)(A), 8 U.S.C. § 1229b(b)(1)(A). Under the stop-time rule, which is entitled "Termination of Continuous Period,"

> any period of continuous residence or continuous physical presence in the United States shall be deemed to end (A) . . . when the [applicant] is served a notice to appear under section 239(a), or (B) when the [applicant] has committed [certain criminal offenses], whichever is earliest.

INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1).

In *Matter of Camarillo*, 25 I&N Dec. 644, 647 (BIA 2011), *abrogated by Pereira v. Sessions*, 138 S. Ct. 2105 (2018), we concluded that this provision is ambiguous as to whether it merely specifies the document DHS must serve to trigger the stop-time rule or imposes "substantive requirements for a notice to appear to be effective in order for that trigger to occur." We then held that under the stop-time rule, any period of continuous physical presence is deemed to end upon the service of a notice to appear, even if the notice to appear does not specify the time and date of the initial hearing. *Id.* at 651–52. The Supreme Court abrogated *Matter of Camarillo* in *Pereira* and held that, pursuant to the plain and unambiguous language of section 240A(d)(1) of the INA, 8 U.S.C. § 1229a(d)(1), a "notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to appear under section [239(a)],' and so does not trigger the stop-time rule." *Pereira*, 138 S. Ct. at 2113–14; *see also id.* at 2114 ("The statutory text alone is enough to resolve this case.").

Following *Pereira*, we held in *Matter of Mendoza-Hernandez and Capula-Cortez*, 27 I&N Dec. 520, 535 (BIA 2019), *overruled in part by Matter of M-F-O-*, 28 I&N Dec. 408, 416 n.13 (BIA 2021), that "where a notice to appear does not specify the time and place of an . . . initial removal hearing, the subsequent service of a notice of hearing containing that information 'perfects' the deficient notice to appear, satisfies the notice

requirements of section 239(a)(1) of the [INA], and triggers the 'stop-time' rule of section 240A(d)(1)(A) of the [INA]." The Supreme Court disagreed with this holding in *Niz-Chavez*, 141 S. Ct. at 1480. Looking again to the plain language of section 240A(d)(1) of the INA, 8 U.S.C. § 1229b(d)(1), the Court concluded that to trigger the stop-time rule a notice to appear must be a single document specifying the time and place of the hearing, and a noncompliant notice to appear missing time or place information cannot be cured by a subsequent notice of hearing specifying this information. *Id.* at 1480, 1484 (applying "th[e] statute's ordinary meaning").

Applying the plain language analysis from the Supreme Court in *Niz-Chavez* and *Pereira*, three circuit courts have found that the statutory text of section 240A(d)(1) unambiguously provides that only two discrete circumstances trigger the stop-time rule: (1) the service of a statutorily compliant notice to appear; or (2) the commission of certain, specified criminal offenses. *Parada v. Garland*, 48 F.4th 374, 377 (5th Cir. 2022) (per curiam); *Estrada-Cardona v. Garland*, 44 F.4th 1275, 1283–85 (10th Cir. 2022); *Quebrado Cantor v. Garland*, 17 F.4th 869, 873 (9th Cir. 2021). Because the entry of a final administrative order of removal is not one of the discrete circumstances enumerated by the statute, these courts concluded that a final order of removal does not trigger the stop-time rule. *Parada*, 48 F.4th at 377; *Estrada-Cardona*, 44 F.4th at 1283–85; *Quebrado Cantor*, 17 F.4th at 873.

We agree with these courts' ultimate conclusion and find, based on Supreme Court precedent, that section 240A(d)(1) of the INA, 8 U.S.C. § 1229b(d)(1), plainly and unambiguously provides that a final administrative order of removal does not trigger the stop-time rule. The only triggering events listed under this provision are a statutorily compliant notice to appear or the commission of certain criminal offenses. "The stop-time rule includes no mention of a final order of removal as a triggering event and it is not our role to rewrite the statute." *Quebrado Cantor*, 17 F.4th at 873. However, our statutory analysis is not limited to section 240A(d)(1) in isolation, because "plainness or ambiguity of statutory language is determined by reference to the language itself . . . *and the broader context of the statute as a whole*." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (emphasis added).

The provision that immediately follows the stop-time rule is section 240A(d)(2) of the INA, 8 U.S.C. § 1229b(d)(2), which is entitled "Treatment of Certain Breaks in Presence." This section provides that an applicant for cancellation of removal

> shall be considered to have failed to maintain continuous physical presence in the
> United States under subsections (b)(1) and (b)(2) if the [applicant] has departed from

the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days.

INA § 240A(d)(2), 8 U.S.C. § 1229b(d)(2).

We have determined that the statutory language of this provision does not set forth an exhaustive list of events that break an applicant's presence. *See Matter of Romalez*, 23 I&N Dec. 423, 425 (BIA 2002) ("The statutory language . . . does not purport to be the *exclusive* rule respecting *all* departures."). We reached this conclusion for two primary reasons. First, the title of section 240A(d)(2) indicates that it deals with "the treatment of 'certain breaks' in presence, strongly implying that there can be 'breaks' other than those which exceed the 90- or 180-day statutory limits." *Id.*[2] Second, the statute's "objective command that departures of certain lengths 'shall' break continuous physical presence implies that shorter departures are acceptable, but it does not specifically exempt all such shorter departures." *Id.* at 426.

Accordingly, we have interpreted section 240A(d)(2) as including certain additional events as "breaks" in presence, even if they are not specifically set forth in the text of this provision. *See Matter of Avilez*, 23 I&N Dec. 799, 805–06 (BIA 2005) (departures following a "formal, documented process" that resulted in a finding of inadmissibility or a refusal of admission are breaks in physical presence); *Matter of Romalez*, 23 I&N Dec. at 424 (holding that "a departure that is compelled under threat of the institution of deportation or removal proceedings is a break in physical presence," even if the departure was for less than the statutorily prescribed time period). The United States Court of Appeals for the Second Circuit has upheld our interpretation of section 240A(d)(2) in *Matter of Romalez* and *Matter of Avilez*. *Ascencio-Rodriguez v. Holder*, 595 F.3d 105, 112–13 (2d Cir. 2010).

The distinct statutory language of section 240A(d)(2) precludes us from interpreting section 240A(d)(1) in a similarly open-ended manner. As noted, section 240A(d)(1) is entitled "Termination of Continuous Period." Congress' use of more conclusive language in the title of section 240A(d)(1) and less definitive language in the title of section 240A(d)(2) suggests that Congress intended the text of section 240A(d)(1) to cover all events that terminate presence, not just certain events. *See generally INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) ("[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and

---

[2]  We recognize that the title of section 240A(d)(1) is instructive, but it does not alone conclusively settle that statute's meaning. *See Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528 (1947).

purposely in the disparate inclusion or exclusion." (alteration in original) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983))).

However, we find additional support for our interpretation of section 240A(d)(1) in the fact that Congress specified that service of a compliant notice to appear or the commission of certain offenses "shall" terminate "*any* period of . . . continuous physical presence." INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1) (emphasis added). In this specific context, the best reading of "any" is that it means "every." *See* ANY, *Black's Law Dictionary* (6th ed. 1990) (stating that the term "any" is "often synonymous with . . . 'every'[] or 'all'"). In other words, "the statute says *every* period of continuous physical presence shall be deemed to end when the stop-time rule applies, leaving *no* periods of continuous physical presence to be controlled by the final-order rule." *Estrada-Cardona*, 44 F.4th at 1284.

Finally, the relevant legislative history reflects that Congress intended sections 240A(d)(1) and (2) to be interpreted differently, which supports our analysis. *See Matter of Mendoza-Sandino*, 22 I&N Dec. 1236, 1242-43 (BIA 2000) (reviewing the legislative history of section 240A(d) and stating it "reflects that the legislators understood that a break in continuous physical presence differs from the termination of continuous physical presence"). Accordingly, Congress intended sections 240A(d)(1) and (d)(2) to "distinguish[] between certain actions that 'end' continuous physical presence, i.e., service of a charging document or commission of a specified crime, and certain departures from the country that only temporarily 'break' that presence." *Id.* at 1240.

Viewing the plain language of section 240A(d)(1) of the INA, 8 U.S.C. § 1229b(d)(1), within the broader statutory context, we hold that the stop-time rule is only triggered by the service of a compliant notice to appear or the commission of certain, specified criminal offenses. Neither event occurred in this case. The respondent's final administrative order of removal did not trigger the stop-time rule, and she has continued to accrue physical presence for purposes of cancellation of removal.

## B. Reopening

DHS argues that the respondent has not met her burden of establishing prima facie eligibility for cancellation of removal. *INS v. Abudu*, 485 U.S. 94, 104 (1988) ("There are at least three independent grounds on which the BIA may deny a motion to reopen. First, it may hold that the movant has not established a prima facie case for the underlying relief sought."); *see also Matter of L-O-G-*, 21 I&N Dec. 413, 414, 419 (BIA 1996). The respondent entered the United States in 2001, she has not left since, and neither the service of her notice to appear nor the 2005 entry of her administratively final

order of removal triggered the stop-time rule.[3]    While she has thus demonstrated the requisite continuous physical presence, the respondent has not made a prima facie showing that her removal would cause exceptional and extremely unusual hardship to her United States citizen son or daughter, who are her qualifying relatives under section 240A(b)(1)(D) of the INA, 8 U.S.C. § 1229b(b)(1)(D) (2018).

The respondent states in her motion that her children have no connection to the area of China she is from and would invariably fail if forced to attend school in a country where they have no knowledge of its language and culture.  The respondent further avers that she, her husband, and her children would endure hardships if she were separated from her family.   The respondent and her husband also state in their respective affidavits that their United States citizen children "would suffer extreme hardship" if the respondent were removed to China.   While we recognize the types of hardship identified by the respondent, she has not identified and documented heightened hardship beyond that which would normally be expected to occur in such circumstances.  *See Matter of Monreal*, 23 I&N Dec. 56, 62-63 (BIA 2001) (defining exceptional and extremely unusual hardship).

Additionally, the respondent has not addressed whether she merits a favorable exercise of discretion, which is required to prevail on an application for cancellation of removal and is particularly relevant given the length of time that has elapsed since she was ordered removed in 2005 and the fact that she attempted to enter the United States with a false passport. *See Matter of C-V-T-*, 22 I&N Dec. 7, 11-12 (BIA 1998) (addressing the types of positive and negative factors to be balanced in considering whether a favorable exercise of discretion is warranted for cancellation of removal). We therefore will deny the respondent's motion because she has not shown a reasonable likelihood that all statutory requirements for cancellation of removal have been met and that she would deserve a favorable exercise of discretion. *Matter of L-O-G-*, 21 I&N Dec. at 419.

Because the respondent has not established prima facie eligibility for cancellation of removal, we need not reach whether *Niz-Chavez* represented a fundamental change in law in July 2021 when the respondent filed her motion to reopen.  *See Matter of G-D-*, 22 I&N Dec. 1132, 1136-37 (BIA 1999) (considering prima facie eligibility for relief in addition to whether a fundamental change in law has occurred for reopening); *Matter of X-G-W-*, 22 I&N Dec. 71, 74 (BIA 1998) (requiring both a fundamental change in law and a showing of prima facie eligibility for relief to warrant sua sponte reopening), *superseded on other grounds by Matter of G-C-L-*, 23 I&N Dec. 359 (BIA 2002).

---

[3]   The respondent submitted a completed application for cancellation of removal with her motion, as required under 8 C.F.R. § 1003.2(c)(1).

Accordingly, the respondent's motion to reopen is denied.

**ORDER:** The respondent's motion to reopen is denied.