RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0285p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JUAN CARLOS PASTOR-HERNANDEZ,

                   *Petitioner*,

    *v.*

PAMELA BONDI, Attorney General,

                   *Respondent*.

No. 24-4104

---

On Petition for Review from the Board of Immigration Appeals.
No. A 206 882 921.

Decided and Filed:  October 17, 2025

Before:  READLER, MURPHY, and BLOOMEKATZ, Circuit Judges.

---

## COUNSEL

**ON BRIEF:**  David C. Knowlton, KENNEDY, CICCONETTI, KNOWLTON & BARNARD CO., LPA, Wooster, Ohio, for Petitioner.  Justin R. Markel, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

## OPINION

---

MURPHY, Circuit Judge.  Juan Carlos Pastor-Hernandez illegally entered the United States.  The Board of Immigration Appeals upheld an order to remove him to Guatemala.  Pastor-Hernandez then moved to reopen his removal proceedings so that he could seek relief that would allow him to voluntarily depart the country.  This relief required him to prove (among other things) that he had the means to travel to Guatemala.  Yet Pastor-Hernandez did not have a Guatemalan passport.  He instead sought to meet this requirement with the claim that he was in

the process of obtaining one. But he did not submit his passport application or any other concrete evidence. The Board thus denied his motion because it found this conclusory claim insufficient. Pastor-Hernandez now argues that the Board applied the wrong legal standard to deny his motion to reopen. It did not. So we deny his petition for review.

I

Pastor-Hernandez was born in Guatemala in 1997. He "speaks the indigenous Mayan language of Quiche and identifies as Quiche Mayan." Admin. R. ("A.R.") 211. Starting in 2011, members of the Mara 18 gang began to harass Pastor-Hernandez. They stole his motorcycle and threatened to kill him if he continued to speak his native language. The next year, gang members asked him to join the gang. When he refused, he says that these individuals cut his finger. The gang also continued to threaten him over the next couple years. Although Pastor-Hernandez reported the gang to the police, the authorities did not help him. In November 2014 when he was 17 years old, he fled Guatemala to escape the gang. Pastor-Hernandez arrived at the United States border the following month.

The day after Pastor-Hernandez entered the United States, the government issued him a "notice to appear" in removal proceedings. This document explained that he was subject to removal under 8 U.S.C. § 1182(a)(6)(A)(i). Pastor-Hernandez conceded that he was removable as charged but sought asylum, withholding of removal, and relief under the Convention Against Torture. An immigration judge denied these requests and ordered the government to remove Pastor-Hernandez to Guatemala. The Board of Immigration Appeals upheld the immigration judge's decision.

In the meantime, the Supreme Court decided *Niz-Chavez v. Garland*, 593 U.S. 155 (2021). There, the Court considered what the phrase "notice to appear" meant for a law that permits the Attorney General to cancel the removal of eligible immigrants. *See id.* at 158. The Court held that only a single document can qualify as a "notice to appear" and that this document must contain all required information (including the date of any removal proceedings). *See id.* at 158–72.

Pastor-Hernandez believed that this decision opened a new remedy for him: voluntary departure. That relief allows immigrants to leave the United States on their own and avoid a formal removal order. *See* 8 U.S.C. § 1229c(b)(1). Yet the law grants this remedy only to immigrants who have "been physically present in the United States for a period of at least one year immediately preceding the date" they received their "notice to appear." *Id.* § 1229c(b)(1)(A). While Pastor-Hernandez received a so-called "notice to appear" the day after he entered the United States, that document did not qualify as valid under *Niz-Chavez* because it did not include the date of his removal proceedings. So he now met the physical-presence requirement for voluntary departure.

Pastor-Hernandez asked the Board to reopen his removal proceedings so that he could seek this relief. The Board denied his motion. To obtain a voluntary-departure remedy, he needed to show more than his continuous presence in the United States. He also needed to show that he had "the means to depart" the country. *Id.* § 1229c(b)(1)(D). He sought to satisfy this separate requirement through an affidavit stating that he was "in the process of renewing" his Guatemalan passport and that he would have the passport if the Board "returned" his case "to the Immigration Court." A.R. 26. The Board found this evidence insufficient. It reasoned that immigrants need a valid "passport" to return to their home country. A.R. 4. And it added that Pastor-Hernandez did not include any "documentary evidence" to support his claim that he had applied to renew his passport. *Id.* So the Board held that he had "not sufficiently shown that he [would] be able to depart the United States under a grant of voluntary departure." *Id.*

II

Pastor-Hernandez has petitioned our court to review the denial of his motion to reopen. His petition requires us to describe the interaction between two immigration provisions: the provision governing voluntary departure and the provision governing motions to reopen.

Start with voluntary departure. The immigration laws provide that the Attorney General (or the Board by delegation) "may" allow certain qualifying immigrants to voluntarily depart the country rather than face forcible removal. *See* 8 U.S.C. § 1229c(b)(1); *Monsalvo v. Bondi*, 145 S. Ct. 1232, 1236 (2025). This relief helps both sides. The government avoids the costs of

removal, while immigrants avoid statutory penalties. *See Dada v. Mukasey*, 554 U.S. 1, 11 (2008). To obtain this relief, immigrants must meet four eligibility requirements. They must have "been physically present" in this country for at least a year before they received their notice to appear. 8 U.S.C. § 1229c(b)(1)(A). They must have possessed "good moral character" for a five-year period. *Id.* § 1229c(b)(1)(B). They must not have been found deportable under provisions that apply to certain criminals. *Id.* § 1229c(b)(1)(C). And, as most relevant here, they must have "established by clear and convincing evidence that [they have] the means to depart the United States and intend[] to do so." *Id.* § 1229c(b)(1)(D). Even if immigrants meet these requirements, though, they do not automatically qualify for relief. The statute's use of the verb "may" shows that the Attorney General has residual discretion over whether to allow immigrants to voluntarily depart. *Id.* § 1229c(b)(1); *see Dada*, 554 U.S. at 8.

The immigration laws also limit our jurisdiction to review the Board's denial of a request for voluntary departure. *See* 8 U.S.C. §§ 1229c(f), 1252(a)(2)(B)(i); *Hernandez v. Garland*, 59 F.4th 762, 772 (6th Cir. 2023); *Alhaj v. Holder*, 576 F.3d 533, 536 (6th Cir. 2009). This jurisdictional limit prohibits us from reviewing any factual findings underlying the denial or any discretionary decision that an immigrant did not warrant this relief. *See Patel v. Garland*, 596 U.S. 328, 347 (2022); *Hernandez*, 59 F.4th at 767. That said, we retain the ability to review "constitutional claims or questions of law" about a denial of voluntary departure. 8 U.S.C. § 1252(a)(2)(D); *see Monsalvo*, 145 S. Ct. at 1239–41; *Alhaj*, 576 F.3d at 536. And the phrase "questions of law" includes not just a pure legal question (such as a question about what a statute means) but also a mixed question of fact and law (such as a question about whether certain facts satisfy a legal standard). *See Wilkinson v. Garland*, 601 U.S. 209, 218–19 (2024).

Turn to motions to reopen. Immigrants have the right to "file one motion to reopen" their removal proceedings. 8 U.S.C. § 1229a(c)(7)(A). But the Supreme Court has long "disfavored" these motions because immigrants have an incentive to file them merely to delay execution of their final order of removal. *INS v. Doherty*, 502 U.S. 314, 323 (1992). So immigrants must satisfy a "heavy burden" to justify reopening. *INS v. Abudu*, 485 U.S. 94, 110 (1988). They must support any factual allegations with "affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(B). And if they seek new remedies, they must include the "application for relief

and all supporting documentation." 8 C.F.R. § 1003.2(c)(1); *Alizoti v. Gonzales*, 477 F.3d 448, 452 (6th Cir. 2007). This evidence must make out a "prima facie case for the relief sought[.]" *Doherty*, 502 U.S. at 323. Under this standard, immigrants must establish a "reasonable likelihood" (but need not make a "conclusive showing") that they have satisfied the requirements for the requested relief. *Trujillo Diaz v. Sessions*, 880 F.3d 244, 249–50 (6th Cir. 2018) (citations omitted); *see Alizoti*, 477 F.3d at 452. And even if they meet this standard, the Board still retains "broad discretion" over whether to grant motions to reopen. *Kucana v. Holder*, 558 U.S. 233, 242 (2010) (citation omitted).

The Supreme Court has held that circuit courts generally have jurisdiction to review denials of motions to reopen. *See Mata v. Lynch*, 576 U.S. 143, 147–48 (2015). Yet, given the Board's discretion over these motions, courts must review denials under "a deferential, abuse-of-discretion standard of review." *Valadez-Lara v. Barr*, 963 F.3d 560, 567 (6th Cir. 2020) (quoting *Kucana*, 558 U.S. at 242). And the Supreme Court has left open a more specific jurisdictional question: What happens if courts would lack jurisdiction to review a denial of the "underlying claim for relief" that an immigrant sought to raise in the motion to reopen that the Board denied? *Kucana*, 558 U.S. at 250 n.17. Consider this case as an example: Pastor-Hernandez seeks voluntary departure. We would lack jurisdiction over a discretionary decision to deny that relief or over any factual findings underlying the denial. *See Patel*, 596 U.S. at 347; *Hernandez*, 59 F.4th at 772. May Pastor-Hernandez avoid this jurisdictional limitation by raising these discretionary or factual issues in a petition for review of a motion to reopen rather than the initial final order of removal? Our cases have questioned this practice. *See Khaytekov v. Barr*, 794 F. App'x 497, 499–501 (6th Cir. 2019), *vacated on other grounds*, 141 S. Ct. 2591 (2021) (mem.); *Hernandez-Perez v. Whitaker*, 911 F.3d 305, 315–16 (6th Cir. 2018); *Pilica v. Ashcroft*, 388 F.3d 941, 945–48 (6th Cir. 2004); *see also Zhou v. Bondi*, 134 F.4th 946, 950–52 (6th Cir. 2025).

But we need not decide whether any restrictions apply here. Pastor-Hernandez's challenge to the denial of his motion to reopen does not raise the type of question that we would lack jurisdiction to consider. For example, Pastor-Hernandez does not challenge the Board's *factual* finding that he did not have a valid Guatemalan passport when he filed his motion. *Cf.*

*Singh v. Rosen*, 984 F.3d 1142, 1155 (6th Cir. 2021). And the Board did not deny his request for voluntary departure as a *discretionary* matter. *Cf. Khaytekov*, 794 F. App'x at 501.

Rather, Pastor-Hernandez raises a "question[] of law" about the Board's ruling. 8 U.S.C. § 1252(a)(2)(D). The parties agree that he met all the requirements to seek voluntary departure except the one requiring him to "establish[] by clear and convincing evidence that [he] has the means to depart the United States[.]" *Id.* § 1229c(b)(1)(D). Pastor-Hernandez argued that he satisfied this requirement because he testified that he was "in the process of renewing" his Guatemalan passport and would have it at any future hearing. A.R. 26. But the Board held that he had "not sufficiently shown" that he had the means to depart. A.R. 4. According to Pastor-Hernandez, the Board committed a purely legal error because it required him to *conclusively prove* (not merely create a *prima facie case*) that he could meet this means-to-depart element at the motion-to-reopen stage. And the question whether the Board applied the correct legal standard raises a pure issue of law that we have jurisdiction to review. *See Ba v. Holder*, 358 F. App'x 609, 612–13 (6th Cir. 2009); *Alhaj*, 576 F.3d at 536.

Still, Pastor-Hernandez's claim fails on the merits. At the outset, he points to no statements in the Board's opinion suggesting that it misunderstood the governing legal standard. The Board, for example, nowhere asserted that Pastor-Hernandez's motion to reopen must conclusively prove that he had the "means to depart" the country. 8 U.S.C. § 1229c(b)(1)(D). To the contrary, the Board recognized that he must establish only "*prima facie eligibility* for the relief sought" at this stage. A.R. 4 (emphasis added) (citing *Matter of Chen*, 28 I. & N. Dec. 676, 682 (B.I.A. 2023)).

Nor does the Board's ultimate resolution evince any mistake of law. The parties do debate a significant legal point about the showing required for a motion to reopen. All agree that Pastor-Hernandez would have lacked the "means to depart" this country unless he had a valid "passport or other travel documentation sufficient to assure lawful entry into" Guatemala. 8 C.F.R. § 1240.26(c)(2). And his affidavit showed that he did *not* have a valid Guatemalan passport because he testified that he was "in the process" of obtaining one. A.R. 26. In other words, Pastor-Hernandez testified that he *would* meet the eligibility requirements at some unknown future date, not that he *had* met them at the time of his motion to reopen.

This statement reveals an important question: May immigrants file motions to reopen that seek relief based on *future* facts?  The government answers no.  As it points out, we have repeatedly stated that immigrants who file motions to reopen must "make[] a prima facie showing that the statutory requirements for the underlying relief *have been* met."  *Yousif v. INS*, 794 F.2d 236, 241 (6th Cir. 1986) (emphasis added); *see Dieng v. Barr*, 947 F.3d 956, 962 (6th Cir. 2020); *Trujillo Diaz*, 880 F.3d at 249–50; *Thawatchai Foythong v. Holder*, 743 F.3d 1051, 1053 (6th Cir. 2014); *Alizoti*, 477 F.3d at 452.  This past-tense language suggests that immigrants must show a reasonable likelihood that they have established the relevant requirements *at the time they file their motion*.  Here, however, Pastor-Hernandez's affidavit disavowed that "the statutory requirements" for voluntary departure "ha[d] been met" then.  *Yousif*, 794 F.2d at 241.

Pastor-Hernandez, by comparison, answers yes.  He claims that the "reasonable likelihood" test requires him to show only that he will likely be able to prove his eligibility for the requested relief *at the time of a future hearing* on that relief.  *Trujillo Diaz*, 880 F.3d at 249–50 (citation omitted).  And he adds that his statement that he applied to obtain a passport showed he would meet this eligibility requirement by that time.

What does the law have to say about this debate?  The statute identifies the information that motions to reopen must contain: "The motion to reopen shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material."  8 U.S.C. § 1229a(c)(7)(B).  One might read the phrase "new facts" (in contrast to *future* facts) as referring to those facts that have come into existence in between the final order of removal and the motion to reopen.  *Id.*  And a regulation requires the motion itself to include the "application for relief and all supporting documentation."  8 C.F.R. § 1003.2(c)(1).  This requirement might also suggest that an immigrant must be eligible at the time of the motion.  On the other hand, one might read the phrase "will be proven at a hearing" to put the focus on the facts that exist at the hearing date rather than the motion date.  8 U.S.C. § 1229a(c)(7)(B).

At day's end, we need not answer this legal question because we do not view the Board's decision as resolving it.  Rather, the Board denied Pastor-Hernandez relief on narrower grounds. It explained that Pastor-Hernandez had failed to include any factual details to support his

conclusory statement that he was in the process of seeking a new passport.  What were the applicable requirements to obtain a Guatemalan passport?  Was he even eligible?  Did he have all the documents required to obtain a passport?  Pastor-Hernandez did not answer any of these questions.  He also "submitted no documentary evidence of having applied for a passport."  A.R. 4.  His failure to submit basic "evidence" in support of his claim "raised questions about whether" he could ultimately meet the requirements for voluntary departure.  *Alizoti*, 477 F.3d at 452.  The Board thus did not commit a legal error by finding he did not establish a prima facie case even assuming Pastor-Hernandez's view that he could rely on future facts.  *See id.*

Pastor-Hernandez's responses do not change things.  He claims that the Board overlooked our precedent suggesting that it should treat motions to reopen like motions for summary judgment by resolving all disputes of fact in his favor at this stage.  *See Trujillo Diaz*, 880 F.3d at 252–53.  And he says that the Board refused to accept as true his affidavit's statement that he would obtain a passport by the time of his hearing.  But the Supreme Court has traditionally compared motions to reopen to "motions for relief from judgment" rather than "motions for summary judgment[.]"  *Dieng*, 947 F.3d at 963 (discussing *Abudu*, 485 U.S. at 109–10).  Besides, the Board would not have violated any summary-judgment rule by holding that his affidavit failed to create a genuine factual dispute.  Our caselaw leaves no doubt that a civil litigant may not rely on "conclusory evidence" to survive a summary-judgment motion.  *Viet v. Le*, 951 F.3d 818, 823 (6th Cir. 2020).  And the Board found Pastor-Hernandez's evidence too conclusory.

Our opinion in *Trujillo Diaz* also does Pastor-Hernandez no good.  There, an immigrant moved to reopen her removal proceedings to seek asylum, but the Board found that she had not made out a prima facie case.  880 F.3d at 247–48.  We held that the Board abused its discretion because it did not accept as true the specific facts in an affidavit showing that a gang had targeted her.  *Id.* at 251–53.  Yet this case looks nothing like *Trujillo Diaz*.  Unlike the "reasonably specific" statements in *Trujillo Diaz*, Pastor-Hernandez's claim that he had applied for a new passport qualifies as the type of "conclusory" evidence that the Board may reject.  *Id.* at 253.

We deny the petition for review.